**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SANDRA LEE MILLER, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | 02: 11-cv-1307 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

June 22, 2012

**I.        Introduction**

Plaintiff, Sandra Lee Miller, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f).

**II.        Background**

**A.        Facts**

Miller, born on February 28, 1963, has obtained both a high school education, as well as a two-year associate's degree in horticulture.  (R. 36, 207).  Her past relevant work experience includes twenty-eight (28) years of employment as a gardener at Carnegie Mellon

University.  Her employment ended on April 24, 2008, when she was terminated from her employment after missing too many days of work.  (R. 36-37, 45, 375).

Plaintiff alleges disability as of April 24, 2008, due to depression, anxiety and arthritis.  (R. 13, 202).  The record reflects that she has not engaged in substantial gainful work activity since having alleged disability in April 2008.  (R. 16).   Medical evidence indicates that Miller has been diagnosed with several mental and physical impairments, which include bipolar disorder, obsessive-compulsive disorder, agoraphobia, anxiety, depression, thyroid disease, high cholesterol, gastroesophageal reflux disease, and arthritis.[1]   (R. 16).  She also has a long history of alcohol abuse, for which she has sought treatment through various programs over the years.  (R. 45).

Plaintiff's mother, for whom she rendered care for from October 2007 to December 2007, died on January 10, 2008, approximately four (4) months prior to the termination of Plaintiff's employment.  (R. 46).  On the day of her mother's funeral, Miller drank to cope with her loss, was arrested for drunk driving and subsequently received a DUI conviction.  (R. 46).  Plaintiff claims that the death of her mother threw her into a deep depression and she attributes the worsening of her impairments to that event.  (R. 202).

---

[1] The ALJ considered the Plaintiff's hypothyroidism, high cholesterol, and gastroesophageal reflux disease, determining that each impairment was non severe.  (R. 16).  The ALJ decided the same for the Plaintiff's arthritis, as there were no specific complaints of the condition found within Dr. Bernaki's records nor known physical limitations.  (R. 16).  Regarding the obsessive compulsive diagnosis, the ALJ also found such to be non severe, recognizing that there was only one diagnosis of that specific impairment, no evidence of a subsequent diagnosis, and that Miller had not alleged the condition in disability reports.  (R. 16-17).

The record medical evidence indicates that Plaintiff first complained of depression to her family doctor, Bernard J. Bernaki, D.O., on February 14, 2008.  (R. 327).  Upon examination, Dr. Bernaki found Miller's general health to be good, that she had a cooperative attitude, and that her thought processes demonstrated coherence and logic.  (R. 327).  Dr. Bernaki found that the onset of Plaintiff's depression was gradual following the death of her mother.  He diagnosed her with alcohol abuse, unspecified; depressive disorder, not elsewhere specified; and adjustment reaction.  (R. 328).  Dr. Bernaki encouraged her to participate in Alcoholics Anonymous ("AA").   (R. 328).

On April 24, 2008, Miller lost her job after having used all of her leave time, which she claims further contributed to her depressed state.  She returned to Dr. Bernaki's office on June 11, 2008 and again complained of depression.  (R. 325).  The doctor's findings in June 2008 were similar to those he previously noted in February 2008.  Dr. Bernaki diagnosed Plaintiff with alcohol abuse, depression disorder, and adjustment reaction and again advised her to participate in AA.  (R. 325-326).

While intoxicated on July 13, 2008, Plaintiff made suicidal comments, in which she stated that she wished to "join her parents on Calvary and was going to take pills."  (R. 434, 445, 477).   At the request of her AA sponsor, Miller presented herself to Western Psychiatric Institute and Clinic ("WPIC") where she reported binge drinking a half of a fifth of liquor one to two times per week. (R. 433, 445).  The record reflects that once Miller became sober, she denied both the suicidal intentions and the taking of any pills, but did admit to binge drinking the night before.  (R. 434, 445, 477).  Plaintiff did not require

3

inpatient admission and made an appointment for both treatment of her depressive symptoms secondary to grief reaction and her alcohol dependence.  (R. 477).

Between July and October of 2008, friends of Plaintiff called WPIC three (3) different times to report her drunken behavior, whereupon staff members arriving at Plaintiff's home found her intoxicated and unstable with impaired orientation, memory, attention, concentration, insight and judgment.  (R. 410, 415, 419, 424, 428).  Plaintiff presented herself to WPIC a second time on December 23, 2008, complaining of depression and anxiety.  (R. 478).  During this visit, she admitted to consuming twelve (12) beers a few times per month, but also claimed to have been "clean" since December 17, 2008. (R. 405, 478).  Upon examination, the attending physician, Kenneth Richmond, M.D., found that Miller had "mild depressive symptoms at the time, which seem situational in nature."  (R. 405, 479).  He also determined that she did not qualify for inpatient treatment and encouraged her to attend AA.  (R. 405. 479).

Plaintiff returned to Dr. Bernaki's office on February 5, 2009 with complaints of depression.  (R. 323, 458).  She appeared to be healthy, clean, properly dressed, alert and oriented, and demonstrated both coherence and logic in her thought processes.  (R. 323). Miller reported having suicidal thoughts during this visit, whereupon Dr. Bernaki diagnosed her with alcohol abuse, depressive disorder and adjustment reaction, and once more encouraged her to continue her participation in AA.  (R. 323-324, 458).

One week later, on February 12, 2009, Plaintiff, was incarcerated for violating the terms of her house arrest punishment from her previous DUI.  (R. 18, 308-320).  While

imprisoned, she submitted to a psychiatric evaluation, which noted that she was a binge drinker; that she had last consumed alcohol the day before her incarceration; and that she exhibited signs and symptoms of alcohol withdrawal. (R. 317-18). That evaluation also diagnosed Miller with bipolar disorder, obsessive-compulsive disorder, substance dependence and arthritis and reported a Global Assessment of Functioning ("GAF") score of 40, which indicates serious limitations or symptoms. (R. 314-15). While incarcerated, Plaintiff attended also detoxification and received mental health services. (R. 317-18).

Plaintiff visited Dr. Bernaki again in June and September 2009, during which she complained of depression and dizziness. (R. 362-65). During Plaintiff's June visit, Dr. Bernaki once again diagnosed her with alcohol abuse and depression, advised her to participate in AA, and prescribed new medication for her depression.[2] (R. 362-64). At her September 2009 appointment, Miller requested to have her medication changed, whereupon Dr. Bernaki referred her to WPIC for psychiatric involvement regarding the psychiatric medications prescribed to her. (R. 362-363, 373).

When Plaintiff presented to WPIC in November 2009 for medication management, she reported that she had been "clean" for a month. Amie Salamon, MSW, who is neither a psychiatrist nor a psychologist, found Plaintiff to have depressive disorder and alcohol dependence, and ruled out both anxiety disorder and bipolar disorder. (R. 381). Plaintiff returned to WPIC for medication management again in January 2010, and again self-reported

---

[2] The medications prescribed to Plaintiff during her June 2009 visit include Depakote (500 mg.) and Klonopin (1 mg.). Dr. Bernaki had previously prescribed other psychiatric medications to Plaintiff during treatment including Lexapro, 20 mg. (prescribed consistently since February 2008) and Prozac, 20 mg. (prescribed since February 2009).

to be "clean" and sober.  (R. 369).  The attending physician Joshua Frank, M.D., noted that

Plaintiff's mood was good and that she had no suicidal ideations.  (R. 370-71).  Dr. Frank

diagnosed her with mood disorder and alcohol dependence and also assessed her with a GAF

score of 55, which indicates moderate limitations or symptoms.  (*Id.*).

After reviewing the record medical evidence and also allowing Plaintiff to submit

additional medical evidence, the ALJ engaged Stuart Gitlow, M.D., a board-certified

physician in general medicine, addiction and forensic psychiatry to perform an independent

medical examination.  (R. 13).  On May 30, 2010, Dr. Gitlow responded to interrogatories, in

which he determined that "there is no objective evidence of dysfunction in the absence of

ongoing alcohol use."  (R. 13, 461-62).  He also found that Plaintiff's bereavement following

the death of  her mother "is complicated and lasts longer than typical (12 months) due to the

ongoing use of high volumes of alcohol."  (R. 461).  Dr. Gitlow concluded that there is "no

evidence whatsoever to support a claim of permanent impairment, particularly given

[Plaintiff's] good response to the combination of sobriety and her current treatment regimen."

(R. 461-462).

After Dr. Gitlow's report was proffered to Miller's representative, she requested a

supplemental hearing which was held on July 30, 2010.  Three days before the hearing, on

July 27, 2010, Plaintiff submitted as additional evidence a three-sentence letter from Dr.

Bernaki, which stated in its entirety:

> Sandra Miller has been a patient of our practice for many years.
> Based on our evaluations as well as evaluations by other
> physicians, we agree that Sandra would still be disabled even if she

> stopped using alcohol.  Please contact our office if you would like
> any further information.

(R. 473).  Dr. Bernaki did not provide any explanation to support his opinion, nor did he identify the "other physicians" referenced in the letter.  (R. 473).  Dr. Bernaki also provided an undated public welfare form on which he checked a box indicating that Miller is permanently disabled due to depression, alcoholism and bipolar disorder.  (R. 360).

### B.  Procedural History

Plaintiff initially filed an application for SSI/DIB on December 19, 2008, in which she claimed total disability since April 24, 2008.  (R. 13).  A video hearing was held on January 29, 2010 before Administrative Law Judge Rosanne M. Dummer ("ALJ").  (R. 13).  Miller was represented by counsel and testified at the hearing.  Beth Kopar, a vocational expert, also testified.  (R. 13).

Before rendering a decision, the ALJ allowed the administrative record to be held open for Plaintiff to submit additional evidence, which was later received and added to the record.  (R. 13). Upon review of the record and testimony from the hearing, the ALJ referred the objective medical evidence by query to medical expert Stuart Gitlow, M.D., M.P.H., who provided a response to the interrogatories on May 30, 2010.  (R. 13).  Upon receipt of Dr. Gitlow's responses, Miller requested a supplemental hearing and also provided additional documentation, including Dr. Bernaki's July 2010 letter.  (R. 13, 473).  A second video hearing was thereafter held on July 30, 2010, at which Plaintiff's attorney again submitted additional documentation, including records from WPIC.  (R. 13).

On August 2, 2010, the ALJ rendered an unfavorable decision to Plaintiff.  (R. 13-25).  In reaching her conclusion, the ALJ stated that "the Plaintiff is under a disability, but that a substance use disorder is a contributing factor material to the determination of disability."  (R. 14).  The ALJ's decision became the final decision of the Commissioner on August 16, 2010, when the Appeals Council denied Plaintiff' s request to review the decision of the ALJ.  (R. 1-6).

On October 14, 2011**,** Plaintiff filed her Complaint in this Court in which she seeks judicial review of the Commissioner's decision.  (R. 1-6).  The parties have filed cross-motions for summary judgment.  Plaintiff contends that the ALJ erred in (i) not properly evaluating Plaintiff's periods of sobriety; (ii) rejecting the July 27, 2010 opinion of treating physician Dr. Bernaki, in which he opined that Plaintiff would be disabled even if she stopped using alcohol; (iii) failing to make every reasonable effort to obtain clarification from Dr. Bernaki regarding his July 27, 2010 opinion; and (iv) substituting her own lay medical opinion for that of a medical expert.  The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence.  The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

III.     **Legal Analysis**

A.     Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971); *Capato v. Comm'r. of Soc. Sec.*, 631 F.3d 626, 628 (3d Cir. 2010) (internal citation omitted).  It consists of more than a scintilla of evidence, but less than a preponderance.  *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

In situations in which a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act.  *See Burns v. Barnhart,* 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB].  *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley,* 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DBI] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel,* 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimants burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920 (1995).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work.  *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r. of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Comm. of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.2d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1)  by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1.  *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2)  in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job.  *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503.  Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment.  *Diaz v. Comm'r. of Soc. Sec,*, 577 F.2d 500, 502 (3d Cir. 2010); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

Typically, the determination of disability is a five-step process, however, in this case the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the second step of the sequential evaluation process.  (R. 20-25).  In making this determination, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since April 24, 2008.  (R. 16).  The ALJ next found that Plaintiff's impairments of depression, alcohol

11

dependence, adjustment reaction disorder and bipolar disorder were severe, causing "more than a minimal effect on [Plaintiff's] ability to perform basic work activities."[3]  (R. 16). Subsequently, the ALJ determined that Miller's impairments, including the substance abuse disorder, met or equaled the criteria under sections 12.04 and 12.09 of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1, therefore finding Plaintiff disabled at step three (3) of the sequential evaluation process.  (R. 17).

However, after reviewing the medical evidence, the ALJ determined that if Plaintiff stopped the substance use, her "remaining limitations would not cause more than a minimal impact on [Plaintiff]'s ability to perform basic work activities; therefore, [Plaintiff] would not have a severe impairment or combination of impairments."  (R. 17-25).   The ALJ made her determination pursuant to 20 C.F.R. § 404.1535 and § 416.935, which provides that an ALJ "must determine if the substance use disorder is a contributing factor to the determination of disability" when there is medical evidence of substance abuse.  (R. 20-25).  As a result, the ALJ concluded that Miller's "substance use disorder is a contributing factor material to the determination of disability," and therefore, she is not disabled within the meaning of the Act. (R. 25).

---

[3] The ALJ properly concluded that Plaintiff's alleged physical impairment of arthritis was not severe, as she did not seek out treatment from a specialist, received over-the-counter prescription for the impairment, did not make significant complaints, and did not use a brace or splint.  (R. 16, 321-328, 361-365).

**B.    Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987).  The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g);  *Schaudeck v. Comm'r. of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

1.  *The ALJ's Decision Is Supported By Substantial Evidence, As She Adequately Analyzed Plaintiff' Periods Of Sobriety When Determining That She Is Not Disabled Under The Act.*

Miller's first argument is that the ALJ did not properly take into account Plaintiff's periods of abstinence from alcohol.  In particular, she claims that the ALJ failed to analyze her period of incarceration beginning on February 12, 2009, in which Miller claims her symptoms persisted, despite her lack of access to alcohol.  (R. 314).  This Court, however, finds that the decision of the ALJ is supported by substantial evidence, as she adequately analyzed Plaintiff's periods of sobriety when she determined that Plaintiff would not be disabled absent alcohol abuse.  (R. 18, 22, 23).

When deciding if a person is disabled under the Act, an ALJ must evaluate "which of [Plaintiff's] current physical and mental limitations, upon which [she] base[s] [Plaintiff's] current disability determination, would remain if [Plaintiff] stopped using drugs or alcohol and then determine whether any or all of [Plaintiff's] remaining limitations would be disabling."  20

C.F.R. § 404.1535(b)(2) and § 416.935(b)(2).  Although the Regulations do not provide

specific requirements of how adjudicators should decipher limitations brought on by substance

abuse from those other mental impairments, the Social Security Administration ("SSA")

advises that "[t]he most useful evidence . . . is that relating to a period when the individual was

not using drugs/alcohol."  *See Mirabile v. Comm'r of Soc. Sec.,* 354 F. App'x 619, 622 (3d Cir.

2009) (*quoting* Social Security Administration, Questions and Answers Concerning DAA from

the 07/02/96 Teleconference, No. EM-96200 (Aug. 30, 1996)).

      The record reflects that the ALJ, in accordance with the recommendations of the

SSA, properly evaluated Miller's few periods of sobriety, including her incarceration, when she

concluded that Miller would not be disabled absent her alcohol abuse.  (R. 18, 22, 23).  When

in prison in February 2009, Plaintiff submitted to a psychiatric evaluation, which noted that she

was a binge drinker, that she had last consumed alcohol the day before her incarceration, and

that she exhibited signs and symptoms of alcohol withdrawal.  (R. 18, 317-318).  The

evaluation also diagnosed her with bipolar disorder, obsessive-compulsive disorder, substance

dependence and arthritis while also assessing her to have a GAF score of 40, which indicates

serious limitations or symptoms.  (R. 314-315).  Contrary to Miller's contentions, the record

reflects that the ALJ did consider her psychiatric evaluation from incarceration (R. 18) and

determined that Plaintiff's symptoms were alcohol-related, stating, "when [Plaintiff] was sent

to prison, she was exhibiting symptoms of withdrawal including sweats and shakes and was

sent to detoxification."  (R. 23, 317-318).

14

Moreover, the ALJ looked to other periods in which Plaintiff claimed abstinence from alcohol and found that her "mental functioning is documented in medical records to improve immensely during the few instances when she has reported some measure of consistent sobriety." (R. 22). For instance, the ALJ recognized that during her December 23, 2008 visit to WPIC, when she claimed to have been sober for several days, Dr. Richmond, found that Miller had only "mild depression" and "did not qualify for inpatient status." (R. 22, 479). Also, the ALJ acknowledged that during Plaintiff's November 2009 visit to WPIC, another occasion where she reported to be "clean and sober," she was found "logical and goal directed, focused, oriented times three, with no difficulties noted in memory, attention or concentration, with fair insight and judgment." (R. 23, 381). The ALJ noted similar findings from Plaintiff's visit to WPIC in January 2010, also a time during which Plaintiff claimed sobriety. (R. 23, 269-370).

In addition, the ALJ summarized that even when analyzing Miller's periods of sobriety, such instances were few and uncertain. (R. 22). For example, the ALJ noted that while Plaintiff had testified to her participation at AA meetings, "she was not sure of the date she last had alcohol" and that "[s]uch information reflects negatively on the [Plaintiff's credibility]." (R. 22). Furthermore, she stated that "there is no objective evidence that the [Plaintiff] was sober for any significant length of time before or after her alleged onset date." (R. 22).

In sum, the Court finds that the ALJ properly analyzed Plaintiff's few periods of sobriety and correctly concluded that Miller would not be disabled if she ceased her alcohol abuse.

2.   *The ALJ's Decision Is Supported By Substantial Evidence, As She Did Not Violate The 'Treating Physician Rule" By Giving Little Weight To Dr. Bernaki's July 27, 2010 Letter.*

Plaintiff next argues that the ALJ, being bound by the "treating physician rule," erred in disregarding the July 2010 opinion of her treating physician, Dr. Bernaki, which opined that Miller "would still be disabled even if she stopped using alcohol."  (R. 473).  Plaintiff further challenges that the ALJ failed to give a required reason for rejecting Dr. Bernaki's statement and also falsely replaced the view of a treating physician for her own lay opinion and the opinion of medical expert, Dr. Stuart Gitlow.  Yet, this Court concludes that the ALJ did not violate the "treating physician" rule by giving little weight to Dr. Bernaki's July 27, 2010 letter.

While it is true that "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (*citing* 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2)), an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel,* 486 F.3d 422, 429 (3d Cir. 1999) (*citing Newhouse v. Heckler*, 753 F.2d 283, 286 (3d. Cir. 1985)).  For instance, an ALJ may reject the opinion of a physician if it is contrary to other medical evidence contained in the record, *see*, *e.g., Frankenfield v. Bowen*, 861 F.2d

16

405, 408 (3d Cir. 1988), or if it is insufficiently supported by clinical data, *see, e.g.*, *Newhouse*, 753 F.2d at 286.  Of particular relevance, an ALJ may reject the view of a treating physician if it is in the form of an unsupported, conclusory opinion.  *See, e.g.*, *Jones v. Sullivan*, 954 F.2d 405, 408 (3d Cir. 1991).  Additionally, the United States Court of Appeals for the Third Circuit has found that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence [of actual disability] at best."  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  Ultimately, the determination of disability, which is a legal determination, is exclusively reserved for the Commissioner and not a medical source.  *See* 20 CFR § 404.1527(e) and § 416.927(e).

The Third Circuit Court of Appeals has also held that when an ALJ rejects the opinion of a treating physician on the basis of contradictory medical evidence, she must give a reason for why such evidence has been rejected.  *See Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981); *see e.g. Kennedy v. Richardson*, 454 F.2d 376 (3d Cir. 1972).  In situations such as this case, where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186  F.3d at 429 (*citing Mason*, 994 F.2d at 1066).  Additionally, when rejecting the assessment of a treating physician, an ALJ cannot make "'speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence," and not due to his or her own credibility judgments, speculation or lay opinion."  *Morales v. Apfel,* 225 F.3d 310, 317 (3d.

Cir. 2000) (citing *Plummer*, 186  F.3d at 429; *Frankenfield,* 861 F.2d at 408; *Kent v. Schweiker,* 710 F.2d 110, 115 (3d. Cir 1983)).

       Here, the detailed medical evidence of record provides no support of Dr. Bernaki's July 27, 2010 opinion, that Miller "would be disabled even if she stopped using alcohol."  (R. 473).  Throughout her numerous visits to his office, Dr. Bernaki consistently found Plaintiff to be in good general health, diagnosed her with alcohol abuse, and encouraged her to seek help for her alcohol problems.  (R. 18, 323-324, 325-326, 327, 362-364, 458).  Miller's evaluations from WPIC contradict the July 2010 opinion as well.  Specifically, after her December 23, 2008 examination, Kenneth Richmond, M.D., found that Plaintiff did not qualify for inpatient status and had "mild depressive symptoms at the time, which seem situational in nature." (R. 405 479).

       The ALJ considered Dr. Bernaki's three-sentence letter of July 27, 2010.  (R. 19). However, the ALJ determined that the letter was "sent solely in anticipation of litigation," was "inconsistent with his own records, and did not corroborate the ongoing problems in the absence of substance abuse."  (R. 19, 24).  In making this determination, the ALJ properly complied with her obligation to explain her rejection of the letter opinion, *see Cotter,* 642 F.2d at 706, finding that Dr. Bernaki "does not indicate what information he used other than claimant self-reports to make this determination, nor the doctors opinions that he refers to."  (R. 19).  In addition, the ALJ stated, "[i]t does not appear that his records refer to any mental status examinations or independent examination of the claimant, nor does he indicate if the claimant was maintaining sobriety, when he made the statement."  (R. 19).   Therefore, the Court finds

and rules that the ALJ's decision to give the letter "little weight" (R. 19) constituted an appropriate rejection, finding the opinion to be contrary to evidence in the record, unsupported by clinical data, and conclusory. *See Frankenfield*, 861 F.2d at 408; *Newhouse*, 753 F.2d at 286; *Jones*, 954 F.2d at 408.

The record also includes an undated public welfare form, in which Dr. Bernaki checked a box which indicates that Plaintiff is permanently disabled due to depression, alcoholism and bipolar disorder. (R. 360). Contrary to Plaintiff's contentions, and although such forms have been held to be unreliable, *see Mason*, 994 F.2d at 1065, the ALJ gave "great weight" to this document, stating that it is "consistent with the evidence of record including the claimant's decreased functioning while drinking." (R. 19). Nonetheless, the ALJ ultimately determined that absent alcohol abuse, Plaintiff's impairments would not be severe. (R. 20-25).

Additionally, the Court also finds that the ALJ did not replace the opinion of Dr. Bernaki with her own lay opinion, but rather based her determination on the evidence of record as a whole, including the opinion of Dr. Gitlow, a board-certified physician in general medicine, addiction and forensic psychiatry. (R. 13-25). Upon review of Miller's medical evidence, Dr. Gitlow determined that "there is no objective evidence of dysfunction in the absence of ongoing alcohol use." (R. 19, 461-62). He further noted that bereavement following the death of Plaintiff's mother "is complicated and lasts longer than typical (12 months) due to the ongoing use of high volumes of alcohol." (R. 461). In sum, Dr. Gitlow concluded that there is "no evidence whatsoever to support a claim of permanent impairment, particularly given [Plaintiff]'s good response to the combination of sobriety and her current

19

treatment regimen."  (R. 461-62).  In considering the assessments of Dr. Gitlow, the ALJ

properly explained that while Dr. Gitlow is a non-treating, non-examining physician, "his

opinion is not inconsistent with the evidence of record and Dr. Bernaki's earlier opinion."  (R.

19).

   Although Miller argues that Dr. Gitlow's opinion is not sufficient, as he did not

examine her records from WPIC, the ALJ addressed and clarified that the WPIC records "are

not inconsistent with Dr. Gitlow's opinion."  (R. 20, 434, 445, 477).  The ALJ acknowledged

that within the WPIC records, Plaintiff's depression was found to be mild and she did not once

qualify for inpatient status.  (R. 20, 434, 445, 477).  The ALJ further supported this position by

reiterating Dr. Gitlow's statement that "Dr. Bernaki's opinions are not consistent with the

AMA Guides to Evaluation of Permanent Impairment nor is it demonstrated based on the

medical notes in the case files."  (R. 24).  She also emphasized that Dr. Gitlow is an addiction

specialist, while Dr. Bernaki is only a primary care physician.  (R. 24).

   In short, this Court finds that the ALJ did not violate the "treating physician rule," as

she properly considered and rejected the unsupported, conclusory opinion of Dr. Bernaki in his

July 27, 2010 letter.

   *3. The ALJ's Decision Is Supported By Substantial Evidence, As She Did Not Have*
*An Obligation To Seek Clarification From Dr. Bernaki Regarding His July 2010 Opinion.*

   Plaintiff further argues that the ALJ was obliged "to make every reasonable effort" to

re-contact Dr. Bernaki before rejecting his July 27, 2010 opinion.  However, this Court

concludes that the ALJ's decision is supported by substantial evidence and she did not have an obligation to seek further clarification from Dr. Bernaki regarding the letter.

The Regulations provide that an ALJ must re-contact a medical source "when the report from [Plaintiff's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 205 (3d Cir. 2008) (*quoting* 20 C.F.R. § 416.912(e)(1) and 20 C.F.R. 404.1512(e)(1)).  Moreover, the United States Court of Appeals for the Third Circuit recognizes that the regulatory language is preceded by an important qualification, requiring re-contact only when "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." *Id.; Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."); *see also* SSR 96-5p (The requirement is only in effect when "such opinions are not clear.")

When deciding to reject the July 27, 2010 opinion, the ALJ concluded that Dr. Bernaki's statement was not inadequate nor ambiguous, but rather "inconsistent with his own records" and "solicited solely in anticipation of litigation." (R. 19).  The ALJ provided Plaintiff with multiple opportunities throughout the administrative process to provide additional medical evidence, hence the lack of necessity for any further clarification.  (R. 13).  In fact, the July 27, 2010 letter was submitted pursuant to such an opportunity and was the last evidence admitted,

as it was sent only three days before Plaintiff's second hearing.  (R. 13-14).  The ALJ assessed

the July 2010 opinion along with the other medical evidence, which included records

previously received from Dr. Bernaki, when making her determination to reject the July 20

opinion.  (R. 18-19).  Moreover, the ALJ further explained that "[o]ther than Dr. Bernaki's

conclusory statement on July 27, 2010, none of [Plaintiff's] treatment providers have stated that

she is disabled without consideration of her alcohol abuse."  (R. 22).

Under this evidentiary record circumstances, the Court finds that the ALJ did not

have an obligation to seek additional clarification from Dr. Bernaki regarding his July 27, 2010

opinion.

*4.  The ALJ Did Not Substitute Her Judgment For That Of A Medical Expert, As Her*

*Determinations Were Supported By Medical Evidence Within The Record.*

Plaintiff's final argument is that the ALJ's decision is flawed, as she substituted her

own judgment for that of a medical expert.  Specifically, Plaintiff argues that the ALJ made her

own medical diagnosis when she found several of Plaintiff's alleged symptoms to be signs of

withdrawal, intoxication or mixing prescription medication with alcohol.  (R. 22).  However,

the Court finds that the ALJ's assessments were based upon the medical evidence of record,

and therefore an accurate conclusion.  (R. 22).

The approach of the Court of Appeals for the Third Circuit with regard to an ALJ's

determination of disability is that "an ALJ is not free to set his own expertise against that of a

physician who presents competent evidence," *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.

1985), nor make speculative inferences from medical reports or their own lay opinion, *see*

*Plummer,* 186 F.3d at 429.  Nonetheless, the Regulations emphasize that the ultimate determination of disability is a legal determination, reserved for the Commissioner and not a medical source.  20 C.F.R. § 404.1527(e) and 416.927(e).

Here, the Court finds that Miller's argument fails, as the record demonstrates clearly that the ALJ's findings were in fact supported by medical evidence of record, and not based upon her own lay opinion.  For instance, Plaintiff's psychiatric report from her February 2009 incarceration assessed her symptom of shakiness to be a sign of alcohol withdrawal.  (R. 318).  Also, the October 2008 records from WPIC specifically note that Plaintiff's reported delusions may be caused by "mixing alcohol with trazadon."  (R. 410).  Moreover, Plaintiff's repeated diagnosis of alcohol abuse by both Dr. Bernaki and the physicians at WPIC, along with the reported improvements during her few periods of sobriety, further support the medical basis upon which the ALJ made her decision with regard to several of Plaintiff's symptoms.  (R. 323-328, 362-365, 410, 415 420, 445-448, 477-479).  In assessing Plaintiff's symptoms, the ALJ properly reviewed the medical evidence of record and thereafter made a legal determination, as is authorized and proper under the Regulations.  20 CFR § 404.1527(e) and 416.927(e).

Therefore, the Court finds and rules that the ALJ did not substitute her own lay opinion, as her determinations were based upon the medical evidence of record.

IV.     **Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges, which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court

must defer to the findings of the ALJ, which are supported by substantial evidence, and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.

For all of the reasons hereinabove set forth, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SANDRA LEE MILLER,          )
                                   )
          Plaintiff        )
      v.                      )     02: 11-cv-1307
                                   )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,   )
                                   )
          Defendant.     )

**ORDER OF COURT**

    **AND NOW**, this 22nd day of June, 2012, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

    1.      Plaintiff's Motion for Summary Judgment (Document No. 8) is **DENIED.**

    2.      Defendant's Motion for Summary Judgment (Document No. 10) is

**GRANTED.**

    3.      The Clerk will docket this case closed.

               BY THE COURT:

               s/Terrence F. McVerry
               United States District Court Judge

cc:     Domenic. A. Bellisario, Esquire
         Email: domenic@bellisario.com

         Albert Schollaert,
         Assistant U.S. Attorney
         Email: albert.schollaert@usdoj.gov